519 F.2d 512
 Teresa M. BURNS, an Administratrix of the Goods, Chattels
and Credits of George Vincent Burns, Plaintiff-Appellant,
v.
PENN CENTRAL COMPANY, n/k/a Penn Central Transportation
Company, Defendant- Appellee.
 No. 558, Docket 74-2294.
 United States Court of Appeals,
Second Circuit.
 Argued March 19, 1975.
Decided July 1, 1975.
 
 Arnold B. Elkind, New York City, (Elkind, Lampson & Sable, New York City), for plaintiff-appellant.
 Robert M. Peet, New York City, for defendant-appellee.
 Before SMITH and TIMBERS, Circuit Judges, and WEINSTEIN,* District Judge.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Teresa M. Burns, widow of George V. Burns and administratrix of her deceased husband's estate, appeals from the judgment of the United States District Court for the Southern District of New York, Whitman Knapp, Judge, dismissing her action for the wrongful death of her husband during the performance of his duties as a trainman for the Penn Central Company. This suit authorized by the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, was tried before a jury but, following the jury's inability to agree upon a verdict, Judge Knapp ultimately determined that the defendant was entitled to judgment as a matter of law and granted the railroad's motion for a directed verdict. We conclude that the evidence offered at trial by the plaintiff was sufficient for purposes of the FELA to entitle her to a final adjudication of her claim by a jury and therefore reverse the judgment of the district court and remand for a new trial.
 
 
 2
 On March 15, 1969, the decedent Burns, a longtime employee of the defendant, was working as a brakeman on a passenger run which passed over the 138th Street Bridge in Manhattan and, en route downtown, stopped to load and unload passengers at a station on 125th Street. As was customary for trainmen to do on this run, Burns opened the side and then trapdoor of one of the cars once the train had passed over the 138th Street Bridge. This action prepared the train for the entrance and departure of passengers at the 125th Street station. To prevent, as prescribed by company rules,[1] attempts by passengers to board or leave the train between stations, Burns followed the also customary practice of assuming a position on the bottom step in the open doorway. With the train slowly approaching the 125th Street station, a rifle shot from the vicinity of 128th Street found Burns in this exposed posture and killed him instantaneously. Unbeknown to Burns and the other employees on the train, there had in the last ten months been four stonings of passenger cars within three blocks of the site of Burns' slaying and an additional four stonings within 25 blocks. The defendant's records, however, evidence its knowledge of these stonings. Whether, in light of this knowledge of the stonings and the general conditions in the Harlem area, the defendant was obliged to take measures to ensure that its employees were not, as Burns in fact was, unwittingly victimized is the subject of the complaint under review.
 
 
 3
 As early as 1955, Judge Jerome Frank was able to observe that "the more recent Supreme Court decisions make it clear that, under that Act (the FELA), the jury's power to draw inferences is greater than in common-law actions." Cahill v. New York, New Haven & Hartford R. R., 224 F.2d 637, 640 (2d Cir.) (Frank, J., dissenting) rev'd, 350 U.S. 898, 76 S.Ct. 180, 100 L.Ed. 790 (1955) (per curiam), order of reversal recalled & amended, case remanded, 351 U.S. 183, 76 S.Ct. 758, 100 L.Ed. 1075 (1956) (per curiam). Two years later the Supreme Court set forth the test for FELA claims to go to a jury in a manner which left little doubt that Judge Frank's characterization was right:
 
 
 4
 Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.
 
 
 5
 Rogers v. Missouri Pacific R. R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (emphasis added). In Gallick v. Baltimore & Ohio R. R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Court then offered a compelling and memorable illustration of the breadth of the applicable test by upholding a verdict allowing a railroad crew foreman to recover for serious injury sustained as the result of a bite by an insect which the jury could infer had come from or been attracted by a fetid pool which the jury could infer the railroad company had been negligent to maintain.
 
 
 6
 In the instant case, the defendant maintains, and the district court agreed, that there was no negligence because the injury was not foreseeable. As Gallick, supra, attests, foreseeability of harm is no less a matter generally left to the jury's broad decision than any other part of the requisite proof to recover under the FELA. Furthermore, although the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions, a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable. See Lillie v. Thompson,332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947) (per curiam) (cause of action under FELA stated by complaint alleging negligence in providing plaintiff telegraph operator assaulted in office by late-night intruder with inadequately lit and unguarded place of employment). At the outset, then, we dismiss any suggestion[2] that the issue framed by this case in any way summoned greater intervention by the trial court than typically sanctioned in FELA cases.
 
 
 7
 Thus, unless, as in Inman v. Baltimore & Ohio R. R., 361 U.S. 138, 140, 80 S.Ct. 242, 244, 4 L.Ed.2d 198 (1959) (flagman killed by drunken motorist at well-lit intersection with all regular railroad crossing signals in working order and no record of similar accidents at site), "the evidence here was so thin that, on a judicial appraisal, the conclusion must be drawn that negligence on the part of the railroad could have played no part in petitioner's (here, decedent's) injury," the district court's decision that a jury verdict was dispensable was contrary to established law. Plainly, in the instant case, the evidence offered by the plaintiff to support a jury finding that the defendant could have foreseen the type of injury incurred and therefore was negligent in the fulfillment of its duties to its employee under the FELA was not so miniscule as to compel such a conclusion. Based on the railroad's actual knowledge of stonings in the vicinity in recent months and its constructive (and indubitably actual) knowledge of the generally dangerous conditions prevailing in the neighborhood in which the fatality transpired, the jury would have acted well within its authority under the FELA by returning a verdict for Mrs. Burns. In view of governing Supreme Court precedent, then, the judgment for the defendant railroad must be reversed.
 
 
 8
 Nor does a recent decision of this court, Hartel v. Long Island R. R., 476 F.2d 462 (2d Cir.), cert. denied, 414 U.S. 980, 94 S.Ct. 273, 38 L.Ed.2d 224 (1973), require, as the district court erroneously assumed,[3] a different result. The case is easily distinguished in light of its peculiar facts. A ticket agent for the railroad arrived at the Mineola station, where he regularly worked, to be met by three men intent on holding him up. In attempting to flee, Hartel was shot and killed. His widow then sought to recover a damages award against the railroad under the FELA. In order to prove that the assault suffered by her husband was actually, or reasonably should have been, foreseen by the railroad, Mrs. Hartel sought to introduce into evidence proof that in the past four years there had been ten robberies or attempted robberies at stations run by the defendant within approximately 5-30 miles of the Mineola station. The district court refused to allow this proof, Hartel v. Long Island R. R., 356 F.Supp. 1192 (S.D.N.Y.1972), and a divided panel of this court upheld the district court's ruling on the ground that the prior incidents offered to establish the defendant's ability to foresee Hartel's misfortune did not occur at the "exact locus of the incident giving rise to the litigation." Hartel v. Long Island R. R., supra, 476 F.2d 462 at 464. In contrast, in the instant case, the evidence of the recent stonings was obviously relevant to the jury's assessment of foreseeability because those incidents occurred at "substantially the same place" as the one prompting the litigation under review. See Cahill v. New York, New Haven & Hartford R. R., 236 F.2d 410, 411 (2d Cir. 1956) (per curiam), cert. denied, 352 U.S. 972, 77 S.Ct. 362, 1 L.Ed.2d 325 (1957), (cited approvingly in Hartel, supra, 476 F.2d 462 at 464). Mrs. Burns is entitled, then, nothing in Hartel to the contrary, to a jury verdict premised upon a record including proof of incidents of a similar nature within recent months transpiring in the general vicinity of the accident.[4]
 
 
 9
 Finally, with regard to a question raised below which may recur on remand, we reject the appellant's suggestion that she is entitled to have the jury consider possible contributory negligence on the decedent's part regardless of the proof on that issue. Judge Knapp ruled in the course of the trial that Mr. Burns was not contributorily negligent as a matter of law. Though one might have thought that the appellant would welcome such a ruling, she contests it on the assumption that a jury will be more willing to bring in a verdict for the plaintiff if it is able to assess a lesser damages award than full compensation for the wrongful death would entail. Thus, by finding Mr. Burns contributorily negligent to some decree, the jury could, in calculating damages under the comparative negligence formula applicable in FELA actions, adjust the ad damnum to a sum with which it would be more comfortable. In simplest terms, the appellant would like a trial in which the jury would be fully unconstrained from returning a verdict contrary to law. While we recognize that juries have the power to decide a case in a manner which compromises the court's instruction on the law, we by no means recognize that juries have any right to ignore the law. The Supreme Court settled this long ago in Sparf and Hansen v. United States, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), when it upheld the trial court's instruction to the jury that it could find murder, or no murder, but not manslaughter because there was no evidence that would reduce any homicide which was committed below the level of murder. See also Berra v. United States, 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013 (1956).
 
 
 10
 The judgment for the defendant railroad is therefore reversed and the case remanded to the district court for proceedings in conformity with this opinion.
 
 
 11
 Reversed and remanded.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Rule 4157-A of the defendant's "Rules for Conducting Transportation" required, in part, at the time:
 Employees in the discharge of their duties may open side and trapdoors, and at stations the doors may be opened only on platform side.
 Employees must be on the alert at all times, particularly at stations, to take necessary action in event passengers attempt to board or leave moving trains.
 
 
 [2]
 Brief for Appellee at 4-8
 
 
 [3]
 Joint Appendix at 230A (hearing on defendant's renewed motion to dismiss complaint and for directed verdict)
 
 
 [4]
 In ordering a new trial, we therefore have no occasion to consider the merits of the Hartel decision, as the plaintiff urges us to do. We do wish to note, however, that the consistency of Hartel with controlling Supreme Court cases in this area is not free from doubt. One member of the Hartel panel vigorously so argued, 476 F.2d 462 at 466-67 (Hays, J., dissenting), and two members of the Supreme Court, dissenting from the Supreme Court's denial of certiorari in Hartel, have since voiced a similar view, 414 U.S. 980 at 980-82, 94 S.Ct. 273 (Douglas & Brennan, JJ., dissenting). Perhaps also significant in this regard is the dissent by three judges of this court from the denial of rehearing en banc in Hartel