Richard **GALLOSE**, Plaintiff–Appellant,

v.

**LONG ISLAND RAILROAD COMPANY,**
Defendant–Appellee.

**No. 1137, Docket 89–7013.**

United States Court of Appeals,
Second Circuit.

Argued May 16, 1989.

Decided June 26, 1989.

Marion Polon, Hauppauge, N.Y. (Allen M. Kranz, Kranz, Davis & Hersh, of counsel), for plaintiff-appellant.

Raymond B. Ritchel, Jamaica, N.Y. (Kevin P. Bilms, of counsel), for defendant-appellee.

Before LUMBARD, PRATT, and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff Richard Gallose, an employee of defendant Long Island Railroad ("the LIRR"), appeals from a judgment for defendant entered on special verdicts after a jury trial in the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge.* Gallose contends (1) that the trial court erred when it found as a matter of law that one of the LIRR's employees was not acting within the scope of her employment, and (2) that the trial court misinstructed the jury on

Gallose's claim that the LIRR had negligently failed to maintain a safe workplace. We agree on both points, and reverse and remand for a new trial.

## BACKGROUND

On June 6, 1987, Linda Brookins, employed as a bar car attendant by the LIRR, reported to work at the LIRR facilities in Jamaica, New York. Concerned about the evidence of drug use and the many vagrants she had seen in the vicinity, and in order to alert her to possible intruders, Brookins brought with her a large German Shepherd-mix dog, which she locked in a bathroom near her work area.

Gallose, a police officer employed by the LIRR, was on patrol that day near the area where Brookins worked. As he came around a corner, Brookins's dog escaped from the bathroom and attacked, biting Gallose on the upper arm.

Gallose brought suit against the LIRR under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, alleging two related, but separate, theories of liability. First, Gallose contended that Brookins was negligent in bringing the dog to work with her, in keeping the animal confined in a bathroom, and in allowing it to escape and attack him, and that the LIRR was liable under the FELA for Brookins's negligent conduct. Second, Gallose maintained that the LIRR had breached its duty to exercise reasonable care in providing a safe workplace.

At trial, the jury heard undisputed testimony regarding the above facts. It also heard conflicting testimony as to whether the LIRR police or other officials previously had knowledge of the dog's presence at the work site. At a charging conference held just before closing arguments, plaintiff requested the district court to instruct the jury on the provisions of the FELA, and to submit to the jury a special verdict form asking: (1) whether Brookins was negligent when she brought the dog to work, locked it in the bathroom, and then allowed it to escape; (2) if so, whether these negligent actions contributed to plaintiff's injuries; (3) whether the LIRR

knew or should have known that Brookins's dog was on the premises; and (4) if so, whether, in light of this knowledge, the LIRR used reasonable care to ensure that the workplace remained safe.

Judge Wexler, in large part, refused these requests. First, as to Gallose's claim based on Brookins's negligence, Judge Wexler correctly ruled that in order for the LIRR to be liable under the FELA for Brookins's negligence, her negligent conduct must have occurred within the scope of her employment, but he then concluded that Brookins's bringing of a large dog to work fell outside the scope of her employment as a matter of law. He therefore refused to submit this claim to the jury.

Second, as to Gallose's claim that the LIRR had negligently failed to provide a safe workplace, the district court held that the LIRR could be liable only if the dog had vicious propensities and the LIRR knew of those propensities. The court specifically rejected plaintiff's contention that knowledge of the dog's presence at the work site was sufficient to require further inquiry; rather, the court held, "[t]here must be knowledge to the Long Island Railroad that the dog had vicious propensities."

Over plaintiff's objections, the district court then instructed the jury and submitted to them a special verdict form consisting of three questions:

1. Did the dog have vicious propensities?

2. Did the Long Island Railroad have knowledge that the dog had vicious propensities?

3. [If answer to both # 1 and # 2 is "yes"] Amount of damages to plaintiff.

After deliberation, the jury found that the dog did have vicious propensities, but that the LIRR did not have knowledge thereof. Consequently, the district court entered judgment for defendant and dismissed plaintiff's complaint.

This appeal followed.

## DISCUSSION

Gallose argues on appeal that the district court erred when it refused to submit the first claim to the jury based on Brookins's negligent conduct; further, he contends that the district court committed reversible error when it instructed the jury that, before the LIRR could be held liable under Gallose's second claim, it had to find both that Brookins's dog had vicious propensities and that the LIRR had knowledge of those propensities.

### A. The Claim Based on Brookins's Negligence.

The FELA's main liability provision, 45 U.S.C. § 51, states in relevant part:

Every common carrier by Railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier * * *.

Thus, under the plain language of the statute, a "common carrier by Railroad" (the LIRR) is liable if one of its employees (Brookins) is negligent, and that conduct injures another of the railroad's employees (Gallose).

The controversy surrounding this claim arose from the district court's application of another requirement that has been read into the FELA: Because § 51 limits an employer's liability to instances where an "employee" is injured by the negligent conduct of another "employee", the LIRR is liable only if Brookins and Gallose were acting within their respective scopes of employment. Although it was undisputed at trial that Gallose was acting within the scope of his employment at the time he received the dog bite, the district court concluded as a matter of law that Brookins's bringing of the dog to work did not fall within the scope of her employment, and therefore refused to submit Gallose's first claim to the jury. This was error.

■ We have no difficulty with the district court's conclusion that the LIRR would not be liable if the negligent conduct occurred outside of the scope of Brookins's employment. Under the FELA, not only must *the injured employee* be acting within the scope of employment at the time of injury, *see, e.g., Schneider v. National Railroad Passenger Corp.,* 854 F.2d 14 (2d Cir.1988), but *the employee whose conduct causes the injury* must also be acting within the scope of his employment. Thus, under the FELA employers are liable for the negligence of their employees only if it occurs within the scope of employment, and no liability attaches when an employee acts "entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer." *Copeland v. St. Louis–San Francisco Railway Co.,* 291 F.2d 119, 120 (10th Cir.1961); *see Hoyt v. Thompson,* 174 F.2d 284, 285 (7th Cir. 1949) (under FELA, employer not liable for negligent conduct of employee unless employee is "acting in the furtherance of the defendant's business").

This court has held in numerous decisions applying the Jones Act, 46 U.S.C. App. § 688—a sister statute to the FELA which incorporates its standards of care, duties, and rules of liability, *see Cain v. Alpha S.S. Corp.,* 35 F.2d 717, 721 (2d Cir.1929), *aff'd,* 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930)—that the employer "may not be held liable unless the particular act performed negligently was also in the scope of employment of the negligent employee." *Trost v. American Hawaiian Steamship Co.,* 324 F.2d 225, 227 (2d Cir. 1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981 (1964); *see also Robinson v. Northeastern Steamship Corp.,* 228 F.2d 679, 681 (2d Cir.) (if employee "was not acting within the scope of his employment" then "his negligence, if any, * * * could not be imputed to the [employer] even if successful performance would further the interests of the [employer]"), *cert. denied,* 351 U.S. 937, 76 S.Ct. 834, 100 L.Ed. 1465 (1956).

■ Where the district court erred was in determining that, as a matter of law, Brookins's conduct in bringing the dog to work fell outside the scope of her employ-

ment. Normally, whether an employee is acting within the scope of employment is a question "to be resolved by the jury from all the surrounding circumstances". *Powers v. New York Central Railroad Co.,* 251 F.2d 813, 816 (2d Cir.1958). This is especially true in negligence actions brought under the FELA, where "the role of the jury is significantly greater * * * than in common law negligence actions", and where the jury's right to pass upon the question of the employer's liability "must be most liberally viewed." *Johannessen v. Gulf Trading & Transportation Co.,* 633 F.2d 653, 656 (2d Cir.1980); *Eggert v. Norfolk & Western Railway Co.,* 538 F.2d 509, 511 (2d Cir.1976). Consequently, the scope of employment issue may be taken from the jury only when it is clear that "reasonable men could not reach differing conclusions". *Baker v. Texas & Pacific Railway Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959); *see also Wilson v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 841 F.2d 1347, 1354–55 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1, 101 L.Ed.2d 953 (1988).

■ Here, we think that a jury reasonably could have reached different conclusions on the scope of employment issue. To be sure, a jury could have found, because Brookins did not have the LIRR's formal permission to bring the dog on the premises and because the dog's presence was not required in order for Brookins to perform her duties, that Brookins's negligent conduct fell outside the scope of her employment. But we also think that there is sufficient evidence in the record that would allow a jury reasonably to conclude that Brookins brought her dog to work in a direct attempt to improve her working conditions and to better perform the tasks assigned her. Brookins was concerned about her physical safety while on the job, especially in light of the vagrants that frequented her work area and the drug paraphernalia found nearby. Arguably, at least as far as Brookins was concerned, the bringing of the dog to work served a legitimate employment purpose: It afforded her physical protection from what she believed to be a real hazard in the workplace and allowed her to concentrate fully on her duties, thus making her more efficient and better able to perform high quality work.

In hindsight, this act may have been "misguided". But that is not the issue here, since in hindsight every negligent act by an employee, whether within the scope of employment or not, would probably appear "misguided". *See Lancaster v. Norfolk & Western Railway Co.,* 773 F.2d 807, 817 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). Rather, the issue is, by bringing the dog to work with her, was Brookins acting within the scope of her employment—that is, was she, within the limits of her employment duties, attempting to further her employer's interests? *See Copeland,* 291 F.2d at 122.

If the only evidence in this case showed that Brookins brought the dog to work with her because she had nowhere else to leave it, or that she had brought the dog to play a practical joke on a friend, or that she did it for some other purely personal reason, the district court's determination that she was acting outside the scope of her employment as a matter of law might have been proper. But here, where the jury could reasonably have found that Brookins brought the dog to work for protection after fruitlessly complaining to the LIRR about what she viewed to be a dangerous condition in the workplace, we cannot say, as a matter of law, that her actions were outside the scope of employment. This question was a matter for the jury to determine in light of all the surrounding circumstances, and the district court erred when it refused to submit this issue to the jury for that determination. *See Powers,* 251 F.2d at 816; *cf. Wilson,* 841 F.2d at 1354–55.

## B. The Claim Based on the LIRR's Failure to Provide a Safe Workplace.

We also think that the district court's charge defined too narrowly Gallose's claim that the LIRR negligently failed to provide a safe workplace.

■ An employer breaches its duty to provide a safe workplace when it knows or

should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees. *See DeChico v. Metro–North Commuter Railroad*, 758 F.2d 856, 862 (2d Cir.1985) (employer fails to deal with hazardous accumulations of ice and snow at workplace); *Lindauer v. New York Central Railroad Co.*, 408 F.2d 638, 640 (2d Cir.1969) (employer "negligent in failing to take any protective measures for employees" whom it knew to be subject to prolonged exposure to cold). This duty is ongoing; "an employer's otherwise reasonable conduct may become unreasonable if the employer, after being informed that a condition is potentially dangerous, fails to investigate" and, if necessary, correct the problem. *Mohn v. Marla Marie, Inc.*, 625 F.2d 900, 902 (9th Cir.1980).

■ The catalyst which ignites this duty is knowledge, either actual or constructive. *See Schilling v. Delaware & H.R. Corp.*, 114 F.2d 69, 71 (2d Cir.1940). Thus, an employer is not liable if it has no reasonable way of knowing that a potential hazard exists because, unlike some other federal statutes, the FELA was never intended to hold an employer absolutely liable for workplace injuries. *O'Hara v. Long Island Railroad Co.*, 665 F.2d 8, 9 (2d Cir. 1981); *see also Conway v. Consolidated Rail Corp.*, 720 F.2d 221, 223 (1st Cir. 1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1911, 80 L.Ed.2d 459 (1984). However, if an employer learns or should learn of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs. *See Mohn*, 625 F.2d at 902.

At the charging conference, Gallose contended that the mere presence of Brookins's dog at the workplace created a potential hazard, and that if the LIRR knew or should have known of this hazard, it then had a duty to exercise reasonable care in warning and protecting its employees. Gallose therefore requested an instruction and special verdict asking the jury to determine whether the LIRR knew that the dog was on the premises, and if it did, whether the LIRR exercised reasonable care. But the district court rejected this request, expressly holding as a matter of law that "[k]nowledge that the dog was on the property [was] not sufficient"; instead, in order for the LIRR to be liable under the FELA, there must have been "knowledge to the Long Island Railroad that the dog had vicious propensities." We disagree.

■ Because of the "myriad of factors" involved, whether the railroad used reasonable care in furnishing its employees a safe place to work is normally a question for the jury. *Ragsdell v. Southern Pacific Transportation Co.*, 688 F.2d 1281, 1283 (9th Cir.1982). As with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed. *See Johannessen v. Gulf Trading & Transportation Co.*, 633 F.2d 653, 656 (2d Cir.1980); *Eggert v. Norfolk & Western Railway Co.*, 538 F.2d 509, 511 (2d Cir.1976). Only in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law. *See Baker v. Texas & Pacific Railway Co.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959).

■ Here, we cannot say, as a matter of law, that a large dog, brought to the workplace by an employee for protection, does not constitute a potential hazard in the workplace unless it possesses vicious propensities. To the contrary, we think that a jury reasonably could have found that the mere presence of this German Shepherd-mix dog, which weighed over seventy pounds and reached almost five feet tall when it stood on its hind legs, created a potential hazard at Gallose's place of employment. Accordingly, the issue before the jury should have been, not whether the LIRR knew that the dog had vicious propensities, but whether the the LIRR knew or should have known that a large German Shepherd-mix dog was on the premises, and if so, whether an employer using reasonable care should have investigated further or taken other steps to inform and protect its employees. *See DeChico*, 758 F.2d at 862; *Lindauer*, 408 F.2d at 640.

Judge Wexler presumably based his instructions and special verdicts in this case on New York law, which holds that, before a third-party can be liable for injuries inflicted by a dog bite, the third-party must have knowledge that the dog is vicious. *See, e.g., Strunk v. Zoltanski*, 62 N.Y.2d 572, 574, 468 N.E.2d 13, 14, 479 N.Y.S.2d 175, 176 (1984) (landlord may be liable if she knows dog is vicious and fails to take reasonable steps to protect others). Here, however, Gallose is proceeding on his negligence claim, not under New York law, but under the FELA, a process "significantly different from the ordinary common-law negligence action", *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 509–510, 77 S.Ct. 443, 450, 1 L.Ed.2d 493 (1957), which holds an employer to a standard of "reasonable forseeability of harm" and measures that standard by what "a reasonably prudent person would anticipate" in light of all the surrounding circumstances. *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 117–19, 83 S.Ct. 659, 665–66, 9 L.Ed.2d 618 (1963).

On this record, exactly what the LIRR knew or should have known, and whether the LIRR exercised reasonable care in light of its knowledge, are questions of fact upon which reasonable jurors could differ. Therefore, the district court erred when it refused to instruct the jury on these issues.

## CONCLUSION

Accordingly, the judgment of the district court is reversed, and the case is remanded for a new trial.