The **BALTIMORE AND OHIO RAILROAD COMPANY,** Appellant–Defendant,

v.

Dawn **TAYLOR,** Individually and as Administratrix of the Estate of Gregory Taylor, Deceased, Appellee–Plaintiff.

No. 49A02–9110–CV–444.[1]

Court of Appeals of Indiana, First District.

April 1, 1992.

---

1. This case was reassigned to this office on February 24, 1992.

Victor L. Frost II, Frost & Hugon, Indianapolis, for appellant-defendant.

John F. Townsend, Jr., Townsend, Hovde, & Montross, Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

The Baltimore and Ohio Railroad Company [B & O] appeals the judgment in the amount of $837,597.00 entered after a bench trial in favor of Dawn Taylor, individually and as administratrix of the Estate of Gregory Taylor, deceased. Dawn Taylor is the widow of Gregory Taylor who was shot and killed while working on the railroad. The B & O raises two issues, neither of which constitutes reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment indicate that on July 22, 1985, Gregory Taylor was working as a brakeman for the B & O Railroad. As the train upon which Taylor was working traveled through a rural part of Rush County, Taylor stepped up on a seat in the locomotive, leaned forward, and projected his head out of the locomotive's side window in order to toss a written message wrapped in a fusee[2] to someone outside of the train he must have thought was a fellow employee. The message Taylor was attempting to pass read "[e]at a bag of shit." As Taylor exposed his head out the window, he was struck by a .22 caliber bullet fired from a nearby field by a thirteen (13) year-old boy. Taylor died from the bullet wound. The record does not indicate whether the boy intentionally shot Taylor or was merely taking a "pot shot" at the train.

Taylor's widow brought suit against B & O under 45 U.S.C. § 51 et seq., the Federal Employers' Liability Act [FELA], alleging the railroad failed to provide Taylor with a reasonably safe workplace. Evidence (a photocopied article) was presented that, in 1978, railroad companies in the United States and Canada reported 757 shooting incidents. The same article quoted Federal Railroad Administration (FRA) data indicating that, in 1978, 291 people were injured by "thrown or otherwise impelled objects." The side windows of locomotives are required, under 49 C.F.R. § 223, to have a protective glazing applied upon them sufficient to withstand the impact of a .22 caliber bullet. The windows on the locomotive in question did in fact have the protective glazing. However, Taylor was not protected by the bullet-proof glass because the window was open and he was projecting his head out of the window at the time he was shot. The trial court found that B & O's negligence played at least a small part in Taylor's death finding the shooting was reasonably foreseeable and that:

> [t]he locomotive engine herein was equipped with windows that complied with the aforesaid glazing requirement, but [B & O] had made no provision whatsoever concerning when and under what circumstances the window should be kept in a closed or mostly closed position so as to afford protection to the occupants of the locomotive as intended by the glazing regulation. In addition, [B & O] did nothing to communicate in any way to Taylor that the window was, in fact, glazed so that it would withstand the impact of a .22 caliber bullet. Nor did [B & O], in any way, educate or communicate with Taylor concerning the risks of gunshot incidents which form the rationale behind enactment of the glazing regulation. [B & O] did nothing to cause the glazed window to be used in such a manner as to implement the intent of the

---

2. A fusee is a red signal flare used for protecting stalled trains. Webster's Ninth New Collegiate Dictionary, p. 500 (1989).

regulation, to provide protection to the occupants of the locomotive.

## DECISION

 B & O requested special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. The purpose of making special findings is to provide parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *Willett v. Clark* (1989), Ind. App., 542 N.E.2d 1354. Whether special findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *Id.* On appeal, we construe the trial court's findings together liberally in support of the judgment; however, we may not add anything to the special findings of fact by way of presumption, inference, or intendment. *Sandoval v. Hamersley* (1981), Ind.App., 419 N.E.2d 813, *trans. denied.* On review of judgments entered in conjunction with T.R. 52 findings, we apply a two-tier standard of review. *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind.App., 569 N.E.2d 997. First, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. *Id.* The trial court's findings will not be set aside unless they are clearly erroneous; that is, the record contains no facts or inferences properly drawn upon facts which support the findings. *Id.* Similarly, we will not reverse the trial court's judgment unless it is clearly against the logic and effect of the facts, or the reasonable, probable deductions to be drawn therefrom. *Id.*

### I.

Whether the trial court's finding of negligence on B & O's part was clearly erroneous because the shooting in rural Rush County was not reasonably foreseeable?

 The present lawsuit was brought under 45 U.S.C.A. § 51 [FELA] which reads:

Every common carrier by railroad while engaging in [interstate commerce], shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; such injury or death *resulting in whole or in part from the negligence* of any of the officers, agents, or employees *of such carrier,* or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

(Emphasis ours). FELA imposes liability on railroad employers only for negligence and does not make the railroad an absolute insurer against personal injury or death suffered by its employees. *Wilkerson v. McCarthy* (1949), 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. However, the standard of negligence under FELA is substantially more liberal than that governing ordinary common-law negligence actions. *Lindauer v. New York Cent. R. Co.* (2nd Cir.1969), 408 F.2d 638. FELA imposes liability upon railroad employers if the railroad's negligence played any part, even the slightest, in the employee's death or injury. *Gallick v. Baltimore & Ohio R. Co.* (1963), 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618. The railroad/tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of its wrongful act. *Id.*

 In FELA negligence actions, the role of the jury (factfinder) is much greater than in common-law negligence actions; the right of the factfinder to pass upon the question of the employer's liability must be most liberally viewed. *Johannessen v. Gulf Trading & Transportation Co.* (2nd Cir.1980), 633 F.2d 653. Under FELA, the factfinder's power to draw inferences is greater than in common-law actions. *Burns v. Penn Central Co.* (2nd Cir.1975), 519 F.2d 512.

 Certain employer duties have become integral parts of FELA. *Ragsdell v.*

*Southern Pacific Transp. Co.* (9th Cir. 1982), 688 F.2d 1281. These duties include: the duty to provide a reasonably safe place to work, *Bailey v. Central Vermont Ry.,* (1943), 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; the duty to promulgate and enforce safety rules, *Ybarra v. Burlington N., Inc.* (8th Cir.1982), 689 F.2d 147; and, the duty to warn employees of unsafe working conditions, *Terminal R. Ass'n of St. Louis v. Howell* (8th Cir.1948), 165 F.2d 135. These employer duties are nondelegable. *Bailey,* 319 U.S. at 352, 63 S.Ct. at 1063.

The reasonable foreseeability of harm is an essential ingredient of negligence under FELA. *Gallick,* 372 U.S. 108, 83 S.Ct. 659. An employer's duty of care in a FELA action turns in a general sense on the reasonable foreseeability of harm. *Id.* The employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition. *Id.* At the same time, FELA provides that the employer's duties become more imperative as the risk to the employee increases. *Bailey,* 319 U.S. at 352, 63 S.Ct. at 1063. The continuous duty to provide a reasonably safe place to work, while measured by foreseeability standards, is broader under FELA than a general duty of due care. Because of the myriad of factors involved, whether the railroad used reasonable care in furnishing its employees a safe place to work is normally a question for the factfinder. *Gallose v. Long Island R. Co.* (2nd Cir.1989), 878 F.2d 80. As with all factual issues under FELA, the right of the factfinder to pass on this issue must be liberally construed. *Id.* Only in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law. *Id.*

A railroad/employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees. *Id.* The catalyst which ig-

nites this duty is knowledge, either actual or constructive. *Id.* Thus an employer is not liable if it has no reasonable way of knowing that a potential hazard exists because FELA was never intended to hold an employer absolutely liable for workplace injuries. *Id.* However, if an employer learns or should learn of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs. *Id.*

Under FELA, the factfinder is not constrained to find that a railroad employee's injury or death caused by a third party's unlawful conduct was not foreseeable. *Burns,* 519 F.2d 512. However, the criminal nature of the act causing injury may well bear on the factfinder's assessment of the railroad's ability to foresee a potential hazard of this type. *Id.* Foreseeability of harm is no less a matter generally left to the factfinder's broad discretion than any other part of the requisite proof to recover under the FELA. *Id.*

B & O argues that it was not negligent because the fatal gunshot in question was not reasonably foreseeable. B & O argues that no evidence was presented of similar shootings in close proximity, or even in the general vicinity, to the litigated shooting in rural Rush County that would have placed the railroad on notice of such a hazard. B & O relies primarily upon two second circuit cases in support of its close proximity/foreseeability argument. *Hartel v. Long Island R. Co.* (2nd Cir.1973), 476 F.2d 462, *cert. denied,* 414 U.S. 980, 94 S.Ct. 273, 38 L.Ed.2d 224; *Burns,* 519 F.2d 512.

In *Hartel,* a railroad ticket agent was working at a certain ticket office when three (3) intruders attempted a holdup. The ticket agent was shot and killed. The trial court granted the railroad a directed verdict. The Second Circuit Court of Appeals affirmed holding that the employee's estate failed to prove that the shooting was reasonably foreseeable. At trial, the estate had offered to prove that there had been 10 holdups or similar incidents at other railroad stations between 5 and 30 miles

from the station where the murder in question had taken place in the preceding four (4) years. (Two (2) of these incidents had taken place in the preceding month.) The trial court refused to permit this evidence to be introduced. The trial court also refused to permit evidence of correspondence and conversations between the railroad ticket agents' union and the railroad requesting increased protection for agents from the dangers of armed robbery. The Second Circuit validated the trial court's evidentiary rulings, stating:

> Plaintiff made no offer of evidence which would have shown that there was any unusual danger at the [particular station where the murder took place]. To be admissible to show the foreseeability of a criminal assault upon an employee for which an employer could be held liable under the FELA, we think that the evidence must be such that it did in fact call, or should have called, to the employer's attention the special dangers found at a particular location.

476 F.2d at 465.

In *Burns*, 519 F.2d 512, the decedent railroad brakeman was fatally shot while standing on the bottom step of an open doorway on the side of a train as it went through Harlem in New York City. Evidence demonstrated that within the preceding ten (10) month period there had been four (4) stonings of passenger trains within three (3) blocks of the shooting incident and an additional four (4) stonings within twenty-five (25) blocks of the shooting incident. The stoning incidents were known to the railroad and had been reported in railroad records. The Second Circuit reversed the trial court's directed verdict in favor of the railroad holding:

> Based on the railroad's actual knowledge of stonings in the vicinity in recent months and its constructive (and indubitably actual) knowledge of the generally dangerous conditions prevailing in the neighborhood in which the fatality transpired, the jury would have acted well within its authority under the FELA by returning a verdict for Mrs. Burns.

519 F.2d at 514, 515. The *Burns* court noted that the *Hartel* decision was not free from doubt pointing out a vigorous dissent in the original decision, the dissent by three judges of the Second Circuit from the denial of rehearing *en banc*, and two dissenters from the United States Supreme Court's denial of certiorari.

We reject B & O's close proximity/foreseeability argument based upon *Hartel* and *Burns*, neither of which we find controlling. While we agree that the railroad's knowledge, constructive or actual, of incidents similar in nature and occurring in close proximity to the incident which caused the employee's death or injury are obviously relevant to the factfinder's assessment of foreseeability, we cannot conclude that the plaintiff's failure in the present case to introduce evidence of earlier shootings in rural Rush or surrounding counties to be fatal to her case.

After all, as stated earlier, specific standards of care are not dictated in the FELA. *Ragsdell*, 688 F.2d 1281. Moreover, the factfinder's power to draw inferences is greater in FELA actions than in common-law actions. *Burns*, 519 F.2d 512. And finally, the matter of foreseeability in FELA actions is generally left to the broad discretion of the factfinder as is every other part of the proof required to prosecute a successful claim under FELA. *Id.*

We must conclude that the trial court's finding concerning the foreseeability issue was supported by evidence in the record. Evidence was presented that, in 1978, 757 shooting incidents were reported by railroads across the United States and Canada. The same year, nearly 300 persons had been injured by thrown or otherwise impelled objects. Congress mandated that the side windows of locomotives (including the window from which Taylor was leaning) be coated with a safety glazing sufficient to withstand the impact of a .22 caliber bullet (the type of bullet which killed Taylor).

The question of whether the railroad exercised reasonable care under the circumstances depends upon a myriad of factors, *Ragsdell*, 688 F.2d 1281, not simply wheth-

er evidence of similar shootings had taken place in close proximity to the present fatal shooting in rural Rush County, Indiana. Considering the broad discretion placed upon the finder of fact to determine all factual issues in FELA cases, *Burns*, 519 F.2d 512, we cannot conclude that a reasonable trier of fact could reach only the conclusion opposite the conclusion reached by the trial court in the present case. *Gallose*, 878 F.2d 80. Therefore, we cannot conclude the trial court's finding that the shooting in question was reasonably foreseeable was clearly erroneous.

## II.

Whether the trial court's finding that Taylor was acting in the scope of his employment at the time of the shooting was clearly erroneous?

■■■■ Under FELA, railroads are only liable for the injuries or deaths of employees incurred while acting within the scope of their employment and in furtherance of the railroad's business. *Green v. River Terminal Ry. Co.* (6th Cir.1985), 763 F.2d 805. Such proof is another essential element of a FELA claimant's burden of proof. *Id.* Horseplay, or a prankish act, which is wholly outside the scope of the prankster's employment is not chargeable to the employer, and hence the railroad is not liable under FELA for injuries resulting from such horseplay or prankish act. *Copeland v. St. Louis–San Francisco Railway Co.*, (10th Cir.1961) 291 F.2d 119. However, a railroad is liable under FELA for an employee's injuries caused by sportive acts outside of the scope of employment if such sportive acts are permitted and encouraged by the carrier. *Griffin v. Baltimore & O. R. Co.* (1924), 96 W.Va. 302, 122 S.E. 912.

■■■ Normally, whether an employee was acting within the scope of employment is a question to be resolved by the trier of fact from all the surrounding circumstances. *Gallose*, 878 F.2d 80. Under FELA, the factfinder's right to pass upon the question of whether the employee was acting within the scope of employment must be most liberally viewed because the

role of the factfinder is significantly greater under FELA than in common law negligence actions. *Id.* The scope of employment issue may be taken from the factfinder only when it is clear that reasonable persons could not reach differing conclusions. *Id.*

■■ B & O argues that Taylor's widow cannot recover under FELA because Taylor was acting outside the scope of his employment at the time he was shot. As stated above, Taylor was shot as he attempted to pass a message reading "[e]at a bag of shit" to a fellow employee. Taylor's estate admits that Taylor's message was not in furtherance of the railroad's business. B & O argues that Taylor was not protected by FELA for the instant he projected his head from the train to engage in an act outside his employment and therefore, the trial court's judgment was clearly erroneous.

With regard to this issue, the trial court concluded:

> [B & O] contends since Taylor was passing a message through the window that did not pertain to train operation, he somehow was outside the protection of the FELA. This argument is without merit. Taylor was, by all accounts, at his post in the train as it was leaving a switching area and in a position to carry out any instructions that might be given him by the engineer or to do any other task that train operations might require. The fact that he was relieving the tedium of his job by a harmless act of levity does not take him outside of the scope of his employment. [B & O's] own witnesses, engineer Goldsby and Conrail foreman Huey confirm that Taylor was not violating any work rule or engaging in any illicit horseplay or any act whatsoever that would subject him to discipline or even criticism. Accordingly, the court finds that Taylor himself was without fault contributing to his death.

Engineer Goldsby testified as follows:

Q: Mr. Goldsby, when this incident occurred I understand that you all were

leaving Glenwood and were headed to Indianapolis?

A: Yes, sir.

Q: Greg Taylor was a good brakeman?

A: Yes, sir, he was.

Q: Was it typical for employees, people on the train, to toss messages off to their buddies or acquaintances?

A: It was done all the time.

Q: And was it done all the time the way Greg was preparing to do it that day?

A: Yes, sir.

Q: As the engineer and being in charge of at least the engine in the absence of anyone higher up did you take any action toward Greg Taylor when you became aware of the fact that he was intending to toss this message off the train?

A: No, sir. None at all.

Q: If you have interpreted that he was doing anything wrong or violating any rules you have the authority to issue a directive to him to discontinue whatever he was doing?

A: If I thought he was jeopardizing his health I would have told him to get his head back in the window but there was nothing unusual about sticking your head out the window.

Q: If he would have been doing anything that would jeopardize the general operation of the train you would have issued some instruction to him to discontinue?

A: That is correct.

We cannot conclude that the trial court's finding that Taylor was "on the job" (and therefore, acting within the scope of his employment) at the time he was struck by the bullet to be clearly erroneous. Taylor's superiors permitted him to pass messages out the locomotive window. We cannot conclude that Taylor was removed from the protection of FELA the brief moment he suffered the fatal gunshot wound because the message he was attempting to pass did not pertain to official railroad business.

Considering the broad discretion of the factfinder under FELA in determining all factual questions including the scope of employment issue, we cannot conclude—under all the surrounding circumstances of the present case—that the trial court's finding that Taylor was acting within the scope of his employment at the time of the shooting was clearly erroneous. *See Gallose*, 878 F.2d 80. Therefore, we find no error.

Judgment affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.