Jerry ACKLEY, Appellant,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a corporation, Appellee.

No. 86–5168.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1986.

Decided June 2, 1987.

Rehearing Denied July 16, 1987.

Gary K. Wood, Minneapolis, Minn., for appellant.

Arlo Sommervold, Sioux Falls, S.D., for appellee.

Before LAY, Chief Judge,
WOLLMAN, Circuit Judge, and
HANSEN,[*] District Judge.

LAY, Chief Judge.

Jerry Ackley appeals from the district court's order denying his motion for a new trial after a jury verdict for the defendant railroad. Ackley attacks the court's jury instructions regarding contributory negligence, assumption of risk, and an employer's duty under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1982) (FELA), to provide a reasonably safe place to work. We reverse and remand for a new trial.

**Facts**

On November 30, 1982, Ackley was injured on the job at Chicago and North Western Railroad (Railroad) as he was winterizing windows at the roundhouse in Huron, South Dakota. Ackley and a co-worker, Dean Remington, had placed a scaffold between beams approximately twenty feet above ground in order to reach the windows. The men used a ladder that was actually the top portion of a straight, aluminum extension ladder to reach the scaffold. This section of the extension ladder was not equipped with rubberized safety shoes. Railroad safety rules require straight ladders to be equipped with safety shoes. Ackley's foreman King knew of this rule yet did not object to the use of the ladder. The bottom portion of the ladder was never located, and there is no evidence indicating when or by whom the bottom portion was removed. Ackley testified that he had used the ladder on numerous occasions and there were no other ladders available for the job except two that were too short to reach the scaffold. Remington testified that he too had used the ladder in other jobs at the roundhouse.

On the day of the accident, Ackley set the ladder upright on the concrete floor and climbed up to the scaffold. Remington held the ladder as Ackley climbed. A rope was attached to the top of the ladder, but Ackley did not lash the ladder to a nearby pipe despite a railroad rule requiring straight ladders to be lashed under certain conditions.[1] The men used the rope to raise supplies and tools to the scaffold. Ackley stepped from the ladder to the scaffold and began working on the windows. Remington then left the room to locate more supplies. In need of more plywood for the job, Ackley climbed down the ladder a few moments later with no one holding it from the bottom. The ladder slipped, and Ackley fell to the concrete floor, sustaining back, hip, and hand injuries.

Ackley sued the Railroad under the FELA, alleging negligence in furnishing unsafe working conditions and equipment that caused his injuries. The Railroad denied any negligence and claimed that Ackley's contributory negligence caused the accident and the injuries. In a general verdict, the jury found for the defendant, and the court[2] overruled Ackley's motion for a new trial. He now appeals.

**Discussion**

■ Ackley first argues that the court erred in instructing the jury regarding contributory negligence[3] and assumption of risk. We need not consider this claim because, as the Railroad correctly points out, a general verdict entered for the defendant forecloses the possibility that the jury found contributory negligence on Ackley's part. Any contributory negligence would mitigate, not eliminate, Ackley's damages. Furthermore, the jury was told that assumption of risk does not bar a plaintiff's recovery under the FELA. Under these circumstances, the jury verdict must be

---

[*] The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation.

[1.] There was a dispute whether the ladder was a "straight ladder" requiring safety shoes or lashing.

[2.] The Honorable Andrew W. Bogue, United States District Court for the District of South Dakota, presiding.

[3.] The court instructed that contributory negligence is not a complete bar to recovery under the FELA but that a finding of some negligence on Ackley's part would mitigate any damages he might recover.

read as finding no negligence on behalf of the Railroad.

We therefore examine solely Ackley's claim that the trial court erroneously instructed the jury regarding the Railroad's duties under the FELA. Ackley maintains that Instruction XVI prejudicially diminished the duty of care that the Railroad owes to its employees under the FELA. Instruction XVI stated: "The Defendant has a right to assume that its employees will exercise reasonable care for their own safety and that they will not disobey safety rules and practices." Such a general instruction appears innocuous on its face; however, in a FELA action involving the factual claims made here, we find prejudicial error in the instruction.

█ In *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 507–08, 77 S.Ct. 443, 448–50, 1 L.Ed.2d 493 (1956) (footnotes omitted), the Supreme Court described the effect of the FELA on an employer's common law duties:

The law [FELA] was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.[4]

Congress intended the FELA to be a broad, remedial statute, and courts have adopted a standard of liberal construction to facilitate Congress' objectives. *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1029, 93 L.Ed. 1282 (1949).[5]

4. Under the FELA, Congress has created a statutory means for employees in certain industries, most notably the railroad industry, to obtain relief for injuries caused by their employers' negligence. In his concurrence in *Wilkerson v. McCarthy*, 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497 (1949) (footnote omitted), Justice Douglas described Congress' goal in enacting the FELA:

The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence. * * * The purpose of the Act was to change [an employee's] strict rule of liability, to lift from employees the "prodigious burden" of personal injuries which [the] system had placed upon them, and to relieve men "who by the exigencies and necessities of life are bound to labor" from the risks and hazards that could be avoided or lessened "by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work."

5. Although specific standards of care are not stated in the statute, certain employer duties have become integral parts of the FELA. *Ragsdell v. Southern Pac. Transp.*, 688 F.2d 1281, 1283 (9th Cir.1982). These include: the duty to provide a reasonably safe place to work, *Bailey*

*v. Central V. R.R.*, 319 U.S. 350, 352–53, 63 S.Ct. 1062, 1063–64, 87 L.Ed. 1444 (1943); the duty to provide reasonably safe tools and equipment, *Baltimore & O.S. R.R. v. Carroll*, 280 U.S. 491, 496, 50 S.Ct. 182, 183, 74 L.Ed. 566 (1930); the duty to promulgate and enforce safety rules, *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 150 (8th Cir.1982); the duty to assign workers to jobs for which they are qualified and to avoid placing workers in jobs beyond their physical capacity, *Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 909 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); the duty to warn employees of unsafe working conditions, *Terminal R.R. Ass'n v. Howell*, 165 F.2d 135, 139 (8th Cir.1948); the duty to protect an employee from intentional torts committed by another employee, *Lancaster v. Norfolk & W. Ry.*, 773 F.2d 807, 818 (7th Cir.1985), *cert. denied*, — U.S. —, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); and the duty to guard against conditions in the workplace that cause emotional harm to employees, *Buell v. Atchison, T. & S.F. Ry.*, 771 F.2d 1320, 1323 (9th Cir.1985), *aff'd in part and vacated in part*, — U.S. —, 107 S.Ct. 1410, 1417–18, 94 L.Ed.2d 563 (1987) (cause of action under FELA for pure emotional injury turns on particular facts; case remanded for further development of record). In addition to these duties, which are well beyond those imposed under the common law of master and servant, the FELA also eliminates or places conditions on common law defenses available to an employer.

■ An employer's duty of care in a FELA action turns in a general sense on the reasonable foreseeability of harm. *Gallick v. Baltimore & O. R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963). The employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition. *Id.* at 118, 83 S.Ct. at 665; *see also Davis v. Burlington N., Inc.*, 541 F.2d 182, 185 (8th Cir.1976). At the same time, the FELA provides that the employer's duties are nondelegable and become more imperative as the risk to the employee increases. *Bailey*, 319 U.S. at 352–53, 63 S.Ct. at 1063–64. This continuous duty to provide a reasonably safe place to work, while measured by foreseeability standards, is broader under the statute than a general duty of due care. *Ragsdell v. Southern Pac. Transp.*, 688 F.2d at 1283.[6]

■ The Supreme Court has emphasized the jury's role in determining whether an employer has breached its duties under the FELA. *Rogers*, 352 U.S. at 506–07, 77 S.Ct. at 448–49; *see also Borough v. Duluth, M. & I.R. Ry.*, 762 F.2d 66, 67 n. 1 (8th Cir.1985) (directed verdict on issue of employer's negligence in FELA action appropriate only in exceptional cases). The jury is required to weigh myriad factors, including the nature of the task and its hazards, to decide whether an employer has furnished its employee with a reasonably safe place to work. *Bailey*, 319 U.S. at 353–54, 63 S.Ct. at 1064–65. This preference for sending questions of negligence to the jury underscores the importance of instructions accurately depicting an employer's duty of care under the statute. Instruction XVI, we believe, prejudicially detracts from this duty.

■ There is no question that an employee in a FELA action has a duty to use reasonable care in the workplace. *Kurn v. Stanfield*, 111 F.2d 469, 473 (8th Cir.1940). The Railroad argues that this general duty of ordinary care perforce creates the right to assume that its employees will exercise due care in the workplace and obey safety rules.

■ The right to assume that others will exercise ordinary care derives from the corresponding duty of due care imposed by the law on every person. W. Prosser & W. Keeton, *supra*, § 1, ch. 1, at 4. It is often said that one may assume that others will act lawfully and carefully, and we accept this as a general principle. But the right to assume another's lawful or careful behavior sometimes reflects neither reality nor the facts in a case:

As a broad generalization, people probably do obey the law, so that unlawful conduct is more or less deviational and unusual. In many situations, therefore, the assumption mentioned no more than reflects the real factual probabilities as to what another person's conduct will be. If the assumption is made only in cases where it reflects the facts, it is useful and proper. But in this connection, two things must be noted. The first is that such an assumption does not always correspond to the facts. It does not in situations where a law is generally disobeyed. *It does not where the facts in a specific case would show to a reasonable person in the actor's position that another person will probably disobey the law this time.* * * * The second thing to be noted is that the assumption has often been *applied rather mechanically, without any real regard to the factual probabilities of the situation.* Perhaps the most significant trend that has taken place in this particular field, in

---

**6.** Heightened standards of care are common in the law. They may arise out of a contract, express or implied, from a special relationship between the parties, or because the defendant is in the position to prevent or lessen the harm. W. Prosser & W. Keeton, *The Law of Torts*, § 33, ch. 5, at 201–03 (5th ed. 1984). Examples of these special duties can be found in the relationship between carrier and passenger, innkeeper and guest, invitor and business invitee, landlord and tenant, school and pupil, and employer and employee. They may also result from a legislative determination that certain parties are in the best position to bear the risk of harm.

recent years, has been the increasing liberalization in allowing the wrongs of other people to be regarded as foreseeable where the facts warrant that conclusion if they are looked at naturally and not through the lens of some artificial archaic notion.

3 F. Harper, F. James Jr. & O. Gray, *The Law of Torts*, § 16.12, at 495–96 (2d ed. 1986) (footnotes omitted) (emphasis supplied); *see also* Restatement (Second) of Torts § 302A and comment c (1965). As the risk of harm becomes more foreseeable, the duty to foresee that risk increases and the right to assume due care correspondingly decreases. What the Railroad is entitled to assume about its employees' behavior, therefore, bears directly on the question of its own duties. *See Atchison, T. & S.F. Ry. v. Seamas*, 201 F.2d 140, 142 (9th Cir.1952).[7] If the Railroad may assume that an employee will not act negligently, then the scope of foreseeability charged to the Railroad is significantly diminished.

Instruction XVI is particularly prejudicial under the facts of this case because it negates the Railroad's duty reasonably to foresee that Ackley would perform his tasks under unsafe conditions.[8] This is graphically demonstrated in the present case because the instruction charges that the Railroad has the right to assume that Ackley would not violate safety rules. We have held that a railroad has the duty to promulgate and enforce safety rules, and evidence of its failure to do so may be considered by the jury in assessing the employer's negligence in a FELA action. *Ybarra v. Burlington N., Inc.*, 689 F.2d at 150. We have also held that an employee's failure to obey safety rules may be considered by the jury in assessing contrib-

utory negligence. *Flanigan v. Burlington N., Inc.*, 632 F.2d 880, 883 (8th Cir.1980); *Beanland v. Chicago, R.I. & Pac. R.R.*, 480 F.2d 109, 115–16 (8th Cir.1973). Approving a charge like Instruction XVI would return us to a time when an employee's safety rule violation barred all recovery in a FELA action. *Chicago, St. P., M. & O. R.R. v. Arnold*, 160 F.2d 1002, 1006–07 (8th Cir.1947); *but see Henwood v. Coburn*, 165 F.2d 418, 423 (8th Cir.1948) (per se rule denying recovery because of employee's safety rule violations is inappropriate in FELA action). Were this the standard, an employee suing under the FELA would be barred automatically from recovery merely because the railroad put on evidence of a safety rule violation. Conversely, an employee's evidence of the railroad's failure to promulgate or enforce safety rules would create a jury question but would not ensure recovery. Such an imbalanced analytical scheme is inconsistent with Congress' objectives in enacting the FELA.

■ The record reveals that the ladder Ackley used was furnished by the Railroad and was the only ladder available that was long enough to reach the scaffold. Ackley's supervisor knew of the condition of the ladder and knew Ackley and others had been using it but took no steps to procure another, safe ladder, nor did he instruct Ackley or others to refrain from using the ladder. The Railroad cannot claim a right to assume Ackley's safe behavior by closing its eyes to the condition of the ladder and to its knowledge that Ackley and others were using it. Despite its awareness of the situation, the Railroad did nothing to remedy a potentially unsafe working condition. Given these facts, we conclude that

---

**7.** In *Seamas,* the trial court instructed the jury that an *employee,* when given either an express or implied order by a foreman, "has the right to assume in the absence of warning or notice to the contrary, that he would not thereby be subjected to injury." 201 F.2d at 142. The appellate court explained that "[w]hat an employee is entitled to *assume* has a vital bearing on the question whether his acts are or are not negligent. * * *" *Id.* (emphasis in original).

**8.** Neither party has directed us to a case where a court in a FELA case has approved an instruc-

tion like Instruction XVI, nor have we located such precedent. The Second Circuit found in *Renaldi v. New York, N.H. & H. R.R.,* 230 F.2d 841, 844 (2d Cir.1956), a FELA action, that the trial court's refusal to give the railroad's proffered instruction, which stated that an employer has a right to assume that its employees will use ordinary care for their safety, was not erroneous. The Second Circuit found that under the facts, the trial court's instructions regarding the employee's general duty of due care sufficiently explained the employee's responsibilities.

the Railroad could reasonably foresee that Ackley would use the ladder in its unsafe condition.

An employer sued under the FELA may not assume away its nondelegable duties. The principles of the FELA must be expressed in instructions setting out the parties' respective duties without reference to any right to assume certain behavior.[9] Instruction XVI reflects neither the law nor the facts in this action. Because the instruction prejudicially diminished the Railroad's foreseeable duty under the statute, we reverse the judgment and remand the cause to the district court for a new trial.

---

**9.** Our holding in no way vitiates an employee's general duty of reasonable care in the workplace, nor does it affect an employer's right to show that the employee's negligence contributed to the injury or that it was the sole cause of the injury.