NOTICE
Decision filed 09/25/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 140622

NO. 5-14-0622

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SHAWN P. MORRIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Marion County. |
| | ) | |
| v. | ) | No. 12-L-60 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Honorable |
| | ) | Wm. Robin Todd, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justices Welch and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Shawn P. Morris, a locomotive engineer for the defendant, Union Pacific Railroad Company, suffered an injury in a work-related incident. The incident involved a surprise encounter with a trespasser inside a dark, unlit interior of one of the defendant's locomotives. The trespasser knocked the plaintiff backward as he escaped out of an unlocked door at the nose of the locomotive. The plaintiff fell backward and sustained injuries. He brought a personal injury claim against the defendant pursuant to the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2006)), alleging that the defendant's negligence played a part in his injuries. He appeals an order of the

1

circuit court granting a summary judgment in favor of the defendant. The issue on appeal is whether the plaintiff presented sufficient evidence from which a reasonable jury could find that the plaintiff's risk of injury was foreseeable. We reverse the circuit court's summary judgment and remand for further proceedings.

¶ 2                             BACKGROUND

¶ 3    The plaintiff's injuries occurred on August 4, 2010, at approximately 10 p.m., at the defendant's Villa Grove, Illinois, railroad yard. At the time of the incident, the plaintiff and a conductor, Tom Moore, were maneuvering five locomotives in the defendant's rail yard in preparation for transporting a line of railroad cars south to the defendant's rail yard facility in Salem, Illinois. The locomotives had arrived at the Villa Grove yard approximately 30 minutes earlier as part of a train that traveled from the defendant's yard in Chicago, Illinois. The Villa Grove yard is on the defendant's railway that runs between Chicago and Salem. It is south of the defendant's rail yard in Chicago and north of the defendant's rail yard in Salem.

¶ 4    At the time of the incident, the plaintiff's typical job assignment was to drive the defendant's trains between Villa Grove and Salem. A different train crew drove the train on which the injury occurred to the Villa Grove yard and got off the train to hand it over to the plaintiff's crew. The plaintiff talked with the arriving crew about how the train handled on the trip from Chicago, boarded the train, and began the process of dropping off and picking up railcars in preparation for the trip to the Salem yard.

¶ 5    The plaintiff testified that part of his job duties that evening required him to couple the five newly arrived locomotives with a sixth locomotive that was already located in the

2

yard. In order to do this, the plaintiff boarded the last locomotive in the line of five locomotives and moved the locomotives so that the locomotives coupled with the sixth locomotive. At that point, the plaintiff was onboard the second to last locomotive in a line of six locomotives, and the new, sixth locomotive became the last locomotive in the line.

¶ 6 Once the sixth locomotive connected with the other locomotives, the plaintiff had to board the sixth locomotive to adjust its headlight switch to indicate that it was now the rear locomotive in the line. After performing the required tasks in the cab of the sixth locomotive, the plaintiff reentered the cab of the fifth locomotive through a door at the rear of the cab. Inside the cab of the fifth locomotive, the plaintiff adjusted a headlight switch to indicate that the fifth locomotive was now an intermediate locomotive rather than the rear locomotive.

¶ 7 In addition to the door at the rear of the cab, the fifth locomotive also had an outside door at its nose. To reach the nose door from the inside of the cab, the plaintiff had to walk down a flight of steps within the interior of the locomotive. After adjusting the headlight switch in the cab of the fifth locomotive, the plaintiff began walking down the interior steps with the intention of exiting the fifth locomotive through its unlocked nose door.

¶ 8 As the fifth locomotive in a line of six, the fifth locomotive was towed without generating any power. Therefore, the defendant's rules required that the circuit breakers that would enable lighting within the fifth locomotive be switched to the off position. This prevented the interior cab lights from being turned on when the locomotive was not

3

operating and producing power. As a result, it was dark inside the fifth locomotive as the plaintiff descended its interior stairs. The plaintiff used a flashlight to light his way while performing job duties inside the fifth locomotive. The plaintiff could see only the areas inside the locomotive at which he pointed his flashlight.

¶ 9 The incident that resulted in the plaintiff's injuries occurred as he began descending the locomotive's interior stairs. He pointed his flashlight down the stairs as he walked, and a trespasser came toward him from his right. The plaintiff could not see the trespasser until the trespasser moved by him, and at that point, he only saw the trespasser's arm and silhouette. As the trespasser ran past him, he felt an elbow to his chest and gut, which knocked him backward, resulting in injuries to his left shoulder and back. The trespasser fled out of the nose door and was never seen again. Approximately 30 minutes had elapsed from the time the locomotive arrived at the Villa Grove yard to the time of the plaintiff's encounter with the trespasser. The plaintiff did not know how, when, or why the trespasser got onto the locomotive but believed that perhaps he was "hitching a ride."

¶ 10                              Lower Court Proceedings

¶ 11 On August 29, 2013, the plaintiff filed a complaint against the defendant under FELA seeking damages in excess of $50,000 for his injuries. The plaintiff alleged that the defendant, through its agents and employees, was guilty of one or more of the following negligent acts or omissions: (1) negligently failed to provide the plaintiff with a reasonably safe place in which to work; (2) negligently failed to take adequate steps to secure its locomotives from the presence of trespassers when the defendant knew or

4

should have known of the likelihood of such trespassers; (3) negligently failed to take adequate steps to secure its premises from the presence of trespassers when the defendant knew or should have known of the likelihood of such trespassers; (4) negligently failed to detect the presence of trespassers on its locomotives in its Villa Grove facilities; (5) negligently failed to detect the presence of trespassers on its premises in its Villa Grove facilities; (6) negligently failed to warn the plaintiff of the presence of trespassers on its locomotives in its Villa Grove facilities; and/or (7) negligently failed to warn the plaintiff of the presence of trespassers on its premises in its Villa Grove facilities.

¶ 12    In its answer to the complaint, the defendant did not dispute that the plaintiff was engaged in the course and scope of his employment when he was injured but denied any negligence.  On July 7, 2014, the defendant filed a motion for summary judgment, arguing that the plaintiff's injuries were the result of a criminal assault by an unknown individual; that the assault was an unforeseeable event; and that, as a matter of law, it had no duty to protect the plaintiff from the unforeseeable event.  Both parties presented affidavits and deposition testimony relevant to the issue of foreseeability.

¶ 13    The plaintiff testified in his deposition that the defendant had a safety rule that stated that if he encountered unauthorized people on the defendant's property, he was to tell them to leave, and if they failed to leave, he was to report the incident.  A copy of this safety rule is included in the record on appeal and is discussed further in our analysis below.

¶ 14    The plaintiff testified that he had worked for the defendant since July 2002. Although he had never experienced a similar incident with a trespasser resulting in

5

personal injury, he did have an incident in 2008 or 2009 involving two trespassers on top of his train that was traveling on the defendant's railway between the Salem and Villa Grove yards. He learned of the trespassers from a dispatcher who had received a report of the trespassers on top of the train. According to the plaintiff, he continued to Villa Grove where Villa Grove police officers attempted to apprehend the trespassers. The plaintiff believed that a Villa Grove police officer was injured while chasing the trespassers.

¶ 15 The plaintiff also testified that he had also been at the defendant's railroad yard in Salem, Illinois, on at least three occasions when police responded to apprehend trespassers in the yard. He testified that the Salem yard was similar to the Villa Grove yard in that "locomotives and railroad cars are stored and assembled there by [the defendant's] employees."

¶ 16 The plaintiff testified in his affidavit that on August 6, 2010, he spoke with Jim Magner, a police officer employed by the defendant, concerning the incident with the trespasser that resulted in his injuries. According to the plaintiff, Magner told him that "there was a harvest occurring on the farms north of Chicago and [the defendant's] Police Department had been receiving reports of trespassers aboard [the defendant's] trains traveling between Salem, Illinois, Villa Grove, Illinois, and Chicago, Illinois." The plaintiff also alleged in his affidavit that "[a]t the time of the incident, it was very common for train crews employed by [the defendant] in and out of the yards at Salem, Illinois[,] and Villa Grove, Illinois[,] to have to walk in and/or work in remote and dark areas to locate, board, and work with locomotives" and that "[i]t was also common for

trains to stop in isolated areas at night sometimes for long periods at the direction of [the defendant] to allow other trains to pass on the tracks."

¶ 17   The plaintiff described the doors that allow access to the interiors of the defendant's locomotives.  There was one door at the locomotive's nose and another door at the rear of the locomotive's cab.  When the incident happened, the doors to the locomotive were not locked.

¶ 18   The record on appeal includes the deposition testimony of Moore, who testified that although he had never experienced a trespasser inside a locomotive before, in 2008 or 2009, he had to chase a trespasser out of a boxcar in St. Peter, Illinois, which is located on the defendant's railway north of Salem.  The trespasser took off running across a field.  He had never witnessed a trespasser in the Villa Grove yard before.  The manager of the Villa Grove terminal operations, Vernon James, testified during his deposition that he was aware that trespassers had been reported.  In one incident, he received a report that a trespasser had been sighted riding on a train that came to the Villa Grove depot heading north to Chicago.  James walked down to the train to see if there was a trespasser, and he saw a person lying down inside a car.  He called the Villa Grove police, and they removed the trespasser from the property.  He was not aware of any other trespassers in the Villa Grove facilities or on locomotives in the facilities.  He described trespassers as being "few and far between."

¶ 19   John Chiumento, an assistant superintendent with the defendant, testified that he worked in Salem for approximately 3½ years as a terminal manager.  During that time, he received a report about a trespasser getting off a train in the yard "once in a while," but

that did not happen very often. He estimated that there were two or three incidents involving trains running between Salem and Chicago over the 3½ years he worked at the Salem yard. He testified that he would not have received any reports of trespassers in Villa Grove or Chicago. A conductor with the defendant, Andrew Robertson, testified that he brought the train on which the plaintiff was attacked into the Villa Grove yard from Chicago. At Villa Grove, he got off the train, and the plaintiff's crew took over. When he handed the train off to the new crew, he did not have any reason to believe that there was a trespasser on any of the locomotives.

¶ 20 On December 17, 2014, the trial court entered an order granting summary judgment in favor of the defendant, finding that there was no genuine issue of material fact concerning whether the plaintiff's injury was foreseeable. The court concluded that the plaintiff had not presented any evidence of any recent, similar hazards in the same vicinity, which would put the defendant on notice of the alleged danger that one of its employees might be threatened by a third-party trespasser. The court found that there was insufficient evidence presented to place the defendant on notice of the likelihood of a "random criminal act," as alleged by the plaintiff. The court concluded that the plaintiff's claim failed on the issue of foreseeability. The plaintiff now appeals the circuit court's judgment.

¶ 21                                 ANALYSIS

¶ 22 This case is before us on an appeal from the circuit court's order granting a summary judgment in favor of the defendant. A summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   735 ILCS 5/2-1005(c) (West 2012). "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1307 (1989).

¶ 23   In order to survive the defendant's motion for summary judgment, the plaintiff does not need to prove his case, but he must present a factual basis that would arguably entitle him to a judgment. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d 684.  "A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008).   The court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent.  *Pyne*, 129 Ill. 2d at 358, 543 N.E.2d at 1308.   Our review of a trial court's entry of a summary judgment is *de novo*.  *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 39, 33 N.E.3d 288.

¶ 24                              Interpretation of a Federal Statute

¶ 25   In the present case, the plaintiff brought his claim under FELA, which is a federal statute.   Therefore, our review of the circuit court's summary judgment requires us to interpret the federal statute.  "When interpreting federal statutes, we look to the decisions of the United States Supreme Court and federal circuit and district courts." *State Bank of*

9

*Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33, 984 N.E.2d 449. Decisions of the United States Supreme Court interpreting federal law are binding on this court. *Id*. Lower federal court decisions, however, are persuasive but not binding in the absence of a decision of the United States Supreme Court. *Id*. ¶ 34. In the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions. *Id*. ¶ 33.

¶ 26 Because uniformity of the law is an important factor in deciding how much deference to afford lower federal courts' interpretations of federal law, we will give "considerable weight" to lower federal courts' interpretations of a federal statute if they are uniform. *Id*. ¶ 35. "However, if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned." *Id*. For example, in *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423, 721 N.E.2d 1149, 1154 (1999), the supreme court declined to follow a decision of the Seventh Circuit in a case involving a preemption issue under FELA when there was a split of authority among the federal circuits and the supreme court believed that the Seventh Circuit case was wrongly decided.

¶ 27 In addition, we also note that the sufficiency of evidence needed to withstand a motion for summary judgment in a FELA case is controlled by federal, not state, law. *Norton v. Norfolk Southern Ry. Co.*, 567 S.E.2d 851, 853 (S.C. 2002) ("It is firmly established that questions of sufficiency of evidence for the jury in cases arising under FELA in state courts are determined by federal rules.").

¶ 28                                    FELA

¶ 29    In the present case, our review of the circuit court's summary judgment begins with a review of the statutory language of FELA and cases interpreting the statute as it relates to the issue of foreseeability.

¶ 30    Congress enacted FELA in 1908 to provide a comprehensive scheme for railroad workplace injuries, preempting state law tort claims. *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007). Congress intended for FELA to be a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Missouri Pacific R.R. Co.*, 356 U.S. 326, 329 (1958). It is "a remedial and humanitarian statute that was specially enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Edsall v. Penn Central Transportation Co.*, 479 F.2d 33, 35 (6th Cir. 1973) (*per curiam*).

¶ 31    FELA is to be construed liberally in order to effectuate its purposes. *Fulk v. Illinois Central R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). In addition, under FELA, "the jury's power to draw inferences is greater than in common-law actions." *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir. 1975).

¶ 32    Section 51 of FELA provides, in pertinent part, that "[e]very common carrier by railroad *** shall be liable in damages to any person suffering injury while he is employed by such carrier *** for such injury *** resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances,

11

machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51 (2006). Therefore, in order to establish a cause of action under FELA, a plaintiff must prove four elements: (1) the defendant is a common carrier; (2) the plaintiff was an employee of the common carrier; (3) the plaintiff sustained an injury while employed by the common carrier; and (4) the defendant's negligence is a cause of the injuries. *Larson v. CSX Transportation, Inc.*, 359 Ill. App. 3d 830, 834, 835 N.E.2d 138, 141-42 (2005). The dispute in the present case concerns the last element of the plaintiff's claim, *i.e.*, whether the defendant's negligence is a cause of the plaintiff's injuries.

¶ 33    A plaintiff's burden under FELA is significantly lighter than in a common law negligence case; a railroad will be held liable where "employer negligence played *any part, even the slightest*, in producing the injury." (Emphasis added.) *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957). However, the basis of the employer's liability is negligence, not the mere fact of the employee's injuries. *Ellis v. Union Pacific R.R. Co.*, 329 U.S. 649, 653 (1947). Therefore, to survive a motion for summary judgment, a plaintiff must offer evidence that could prove "the common law elements of negligence, including duty, breach, foreseeability, and causation." *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998). Each of these four elements of negligence are related, but are also distinct components of a FELA claim.

¶ 34    Whether a defendant has a duty to the plaintiff is a question of law to be decided by the court. *Fulk*, 22 F.3d at 125 ("the question of whether a duty exists in the first place remains with the court"). Certain duties have become integral parts of FELA, including the employer's duty to provide a reasonably safe workplace, to promulgate and

12

enforce safety rules, and to warn employees of unsafe working conditions. *Baltimore & Ohio R.R. Co. v. Taylor*, 589 N.E.2d 267, 271-72 (Ind. Ct. App. 1992). "A railroad/employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Id*. at 272.

¶ 35 In a FELA action, an employer's duty of care "turns in a general sense on the reasonable foreseeability of harm." *Ackley v. Chicago & North Western Transportation Co.*, 820 F.2d 263, 267 (8th Cir. 1987). Therefore, under FELA, to establish that a railroad breached its duty to provide its employees with a safe workplace, the plaintiff must show circumstances in the workplace that the railroad could have reasonably foreseen as creating a potential for harm. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). The employer's duty to provide a reasonably safe place to work, while measured by foreseeability standards, is continuous and broader under the statute than a general duty of care. *Ackley*, 820 F.2d at 267.

¶ 36 While the existence of a duty is a question of law, foreseeability, breach of duty, and causation are questions of fact for a jury to decide, assuming that there is evidence in the record creating a genuine issue for trial. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 116-18 (1963) (holding that the "jury could properly find that there was a causal relationship between the railroad's negligence and petitioner's injuries" and that reasonable foreseeability had been satisfied in the "jury's findings"); *Almendarez v. Atchison, Topeka & Santa Fe Ry. Co.*, 426 F.2d 1095, 1099 (5th Cir. 1970) (it was proper for the jury to determine "whether the railroad could have reasonably foreseen that a

13

condition on its property could cause injury"); *Fulk*, 22 F.3d at 125 (breach of duty is a question for the jury). Because the four elements of traditional negligence are distinct, "at the summary judgment stage, keeping the legal question of duty distinct from the factual questions of foreseeability, breach, and causation is essential to ensure that the court does not inappropriately decide factual issues that should be submitted to the jury." *Norfolk Southern Ry. Co. v. Zeagler*, 748 S.E.2d 846, 852 (Ga. 2013) (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 55 (1949) ("importance of preserving for litigants in FELA cases their right to a jury trial")).

¶ 37    In the present case, the circuit court focused on foreseeability in granting the defendant's motion for a summary judgment. The court stated that "there is no genuine issue as to any material fact that the injury received by the plaintiff was foreseeable." The court explained that the plaintiff did not present any evidence of "recent similar hazards in the same vicinity which would put [the defendant] on notice of the alleged danger that one of their employees might be threatened by third-party trespasser." The court stated that the plaintiff's claim fails on the issue of foreseeability because he had "not established any genuine issue of material fact of any prior events which would meet the three requirements set forth in the case law cited by both parties being (1) recent (2) similar hazards, (3) in the same vicinity."

¶ 38    We disagree with the circuit court's analysis. The plaintiff presented sufficient evidence from which a reasonable jury could conclude that the defendant knew or should have known of potential dangers to employees from surprise encounters with trespassers on its locomotives that are en route along its railway between Chicago and Salem.

14

¶ 40    Some courts have held that, under FELA standards, the level of proof required for the foreseeability element of negligence is more relaxed than common law negligence actions. This is true, the courts reason, because a jury has power in FELA actions to draw inferences greater than in common-law actions. *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir. 1975). In addition, the issue of "foreseeability of harm is no less a matter generally left to the jury's broad decision than any other part of the requisite proof to recover under the FELA." *Id*. Therefore, a jury should make determinations of foreseeability unless the evidence is " 'so thin that, on a judicial appraisal, the conclusion must be drawn that negligence on the part of the railroad could have played no part in [the defendant's] injury.' " *Id*. (quoting *Inman v. Baltimore & Ohio R.R. Co.*, 361 U.S. 138, 140 (1959)). We agree with the decisions that interpret FELA as having a relaxed foreseeability standard.

¶ 41    FELA's relaxed liability standard, as it relates to foreseeability, was highlighted by the United States Supreme Court in *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108 (1963). In that case, the Court upheld a verdict against a railroad when its employee established that an unidentified bug bite he obtained near a stagnant pool of water on the railroad's property led to the amputation of his legs. *Id*. at 109-10. The railroad had permitted a fetid pool of water to exist on its grounds, and foreseeability was an issue in that case because there was no evidence that the insect that stung the employee was hatched from the stagnant pool or was attracted there by it. *Id.* at 112-13. Nonetheless, the Court stated that because the railroad "knew that the accumulation of the pool of

water would attract bugs and vermin to the area–it is clear that the jury concluded that [the railroad] should have realized the increased likelihood of an insect's biting [the employee] while he was working in the vicinity of the pool." *Id*. at 118-19. Therefore, the railroad's maintenance of the stagnant pool and knowledge that it attracted bugs were enough to establish reasonable foreseeability under FELA. *Id*. at 117-18.

¶ 42 The Court in *Gallick* also rejected the railroad's argument that foreseeable harm required the plaintiff to prove that the railroad had notice of a prior similar incident. *Id*. at 121-22. The Court stated that proof of "similar incidents *** in the past" was "far too narrow a concept of foreseeable harm to negative negligence under" FELA. *Id*. at 121.

¶ 43 Another example of a federal court applying the relaxed foreseeability standard under FELA is found in *Syverson v. Consolidated R. Corp.*, 19 F.3d 824, 825 (2d Cir. 1994). In that case, the court applied the relaxed foreseeable-harm standard in a case where the harm was caused by a third party's criminal conduct. The plaintiff sat in his parked car, working on paperwork, in a remote part of the defendant's rail yard when he was attacked by a knife-wielding stranger. The plaintiff alleged that an area around the yard was commonly known as the "weeds"; that the area was a known encampment for tramps, alcoholics, drug addicts, and suspicious persons; that the railroad was aware of several criminal incidents involving these persons; that it failed to rid its property of them; and that it thereby failed to ensure safe working conditions. *Id*.

¶ 44 The district court dismissed the plaintiff's claim because the plaintiff could not show that the railroad should have foreseen the attack by the trespasser. *Id*. at 826. On appeal, however, the court noted that an employer subject to FELA "is potentially

16

responsible for risks that would be too remote to support liability under common law." *Id.* The court held that it did not matter whether the railroad could anticipate that a particular trespasser would stab the plaintiff. *Id.* Instead, all the plaintiff needed to show to reach a jury was that the railroad "should have foreseen that the presence of vagrants and other trespassers on its property created an inherently unsafe condition for its employees." *Id.* The court noted that the railroad was aware that the "weeds" area near its yard was a magnet for transients and vagrants and that there had been past criminal activity at the yard, including vandalism and breaking into box cars. *Id.* at 827. One employee had confronted a trespasser who was trying to steal railroad property and who menaced the railroad worker with a metal pipe. *Id.*

¶ 45 The court concluded that "[t]hin as this evidence is, it is enough under FELA to raise a jury question as to whether the railroad exercised reasonable care, given what was reasonably foreseeable, to furnish [the plaintiff] with a safe workplace." *Id.* The court stated that although " 'the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions, a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable.' " *Id.* at 826-27 (quoting *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir. 1975)).

¶ 46 Likewise, in *Dalka v. Wisconsin Central, Ltd.*, 2012 WI App 22, 811 N.W.2d 834, a railroad employee was injured when a drunk driver drove into a rail yard and toward the employee. The employee injured his knee and back when he jumped out of the way of the oncoming vehicle. *Id.* ¶ 4. The railroad maintained that the employee did not present

17

any evidence from which a reasonable jury could conclude that it should have foreseen the third party's criminal acts that resulted in the employee's injuries. *Id*. ¶ 15. The court, however, held that the employee presented sufficient evidence to create a genuine issue of material fact on whether the harm was foreseeable. *Id*. ¶ 30.

¶ 47 The employee presented evidence that the railroad had notice of several incidents of trespass at the rail yard in the six months prior to the employee's injuries, including suspicious activities, vehicles, and persons. *Id.* ¶ 31. Although the rail yard had a problem with trespassers, the railroad had not installed any security fencing to keep trespassers out. *Id.* The court stated that the employee presented evidence that the railroad was aware of a trespass problem, that the trespassers had committed crimes at the rail yard, that the railroad knew that the trespassers could be intoxicated or mentally unstable, and that it had not taken any proactive steps to prevent trespassers from entering the rail yard. *Id*. ¶ 33. The court concluded that the employee's evidence presented at the summary judgment stage raised "a genuine issue of fact regarding whether [the employee's] injuries, resulting from the criminal act of a third-party trespasser, were *foreseeable under FELA's relaxed standard*." (Emphasis added.) *Id*. ¶ 34.

¶ 48 In the present case, we are faced with the task of determining whether the plaintiff presented any evidence from which a reasonable jury could conclude that the defendant could foresee an unsafe work environment as a result of trespassers. We agree with the decisions described above that apply a relaxed foreseeability standard in FELA cases. However, we believe that the circuit court's summary judgment in the present case was inappropriate regardless of whether we apply a relaxed foreseeability standard.

18

¶ 49    The defendant's safety rules that are included in the record on appeal directly contradict the circuit court's holding that there was no evidence from which a jury could find that the defendant could have foreseen a "danger that one of [its] employees might be threatened by a third-party trespasser."   Rule 70.9 of the defendant's safety rules, which was in effect when the plaintiff encountered the trespasser, directs the defendant's employees as follows:

> "70.9: Removal of Unauthorized Persons
>
> Unauthorized persons or *trespassers* on company property must be told to leave the premises unless *confronting* the person(s) would be *unsafe*.   If the person(s) refuse to leave, or if *confronting* the person(s) would be *unsafe*, *request immediate assistance from Railroad Police or local law enforcement authorities*. When feasible, Railroad Police must be advised of all unauthorized persons or trespassers on company property."   (Emphasis added.)

¶ 50    A jury could find that Rule 70.9 establishes that the defendant was, in fact, aware that its employees could encounter trespassers while performing their job duties and was aware that an employee/trespasser encounter could be "unsafe."   The plaintiff happened upon a trespasser while performing job duties inside the defendant's dark, unlit, unlocked locomotive interior.   The plaintiff did not see the trespasser and, therefore, did not have the opportunity to "confront[ ]" the trespasser or, alternatively, call for law enforcement assistance, as required by the defendant's safety rules.   A jury could infer from the evidence in the record that the trespasser knocked the plaintiff backward in order to escape the confines of the locomotive and avoid capture.   A reasonable jury could find

that the plaintiff's encounter with this trespasser, as well as the "unsafe" risk he faced during the encounter, are encompassed within the defendant's safety rule and, therefore, were foreseeable by the defendant.

¶ 51    The safety rules constitute evidence from which a jury could conclude that the plaintiff's risk of injury from a trespasser was foreseeable.  See *Huckaba v. CSX Transportation, Inc.*, No. 3:13-cv-0586, 2015 WL 672334, at *3 (S.D. Ill. Feb. 17, 2015)[1] ("Further circumstantial evidence of foreseeability was Defendant's own safety rules and instructions regarding lifting.  Defendant offered programs explaining how to lift safely.  The programs discussed proper lifting techniques.  Moreover, the programs instructed its workers to use a lift or hoist if available."); *Fiero v. Southern Pacific Transportation Co.*, 726 P.2d 619, 621 (Ariz. Ct. App. 1986) (railroad's rule providing that pathways must be clear of debris that might interfere with the footing of railroad employees "indicate the foreseeability of the risk resulting from littered walkways").  The circuit court erred in refusing to allow a jury to consider the defendant's safety rule in light of the plaintiff's evidence of his injury and make a factual determination of whether the plaintiff's risk of injury was foreseeable.  It usurped a jury's fact-finding function by granting the summary judgment in favor of the defendant as a matter of law.  When we properly construe this evidence liberally in favor of the plaintiff, it becomes apparent to us that a reasonable

---

[1]An unpublished federal decision is not binding or precedential in Illinois courts, but we may follow the same reasoning if we find it persuasive.  *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63, 11 N.E.3d 489.

jury could find that the defendant knew that its employees faced a potential hazard in the workplace due to "unsafe" encounters with trespassers.

¶ 52 In support of the circuit court's summary judgment, the defendant posits that it had "no way of knowing that a trespasser was present on the locomotive at issue." Indeed, we note that the plaintiff testified that he did not know how, when, or why the trespasser ended up inside the locomotive and did not present any evidence from which a jury could determine these questions. However, FELA's foreseeability standard does not require evidence that a defendant could foresee the injury in the exact form in which it occurred; instead, it is sufficient if the defendant "might reasonably have foreseen that *an injury might occur*." (Emphasis in original and internal quotation marks omitted.) *Mullahon v. Union Pacific R.R.*, 64 F.3d 1358, 1364 (9th Cir. 1995).

¶ 53 For example, in *Gallick*, there was no evidence that the employee's injuries were caused by an insect hatched from the known stagnant pool or attracted to the area by the stagnant pool. Nonetheless, on the issue of foreseeability, the Court stated that because the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area–it is clear that the jury concluded that [the railroad] should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." *Gallick*, 372 U.S. at 118-19.

¶ 54 Likewise, in the present case, on the issue of foreseeability, the plaintiff need not prove exactly how, when, or why the trespasser boarded the locomotive. In order to survive a summary judgment motion, it is sufficient if he presented evidence from which a jury could find that it was foreseeable by the defendant that an injury to an employee

21

might occur from an encounter with a trespasser on one of its trains. The plaintiff presented sufficient evidence from which a jury could make this finding.

¶ 55 In addition to the safety rule noted above, the record includes the plaintiff's deposition testimony explaining that he experienced an incident in 2008 or 2009 involving two trespassers on top of his train traveling north from Salem toward Villa Grove. The plaintiff testified that when he stopped near the Villa Grove yard, local police officers attempted to apprehend the trespassers, but the trespassers took evasive action to avoid being caught. The plaintiff believed that a Villa Grove police officer was injured while chasing the trespassers. The plaintiff also testified that he had been at the defendant's railroad yard at Salem on at least three occasions when police responded to apprehend trespassers in the yard. He testified that the Salem yard was similar to the Villa Grove yard in that "locomotives and railroad cars are stored and assembled there by [the defendant's] employees." The plaintiff presented evidence in his affidavit that, shortly after his injury, a police officer employed by the defendant told him that there was a harvest occurring at farms north of Chicago and that the defendant's police department had received reports of trespassers aboard the defendant's trains traveling between Salem, Villa Grove, and Chicago, *i.e.*, the same railway path that the locomotive at issue in the present case traveled and was going to travel.

¶ 56 The plaintiff testified in his affidavit that at the time of his encounter with the trespasser, "it was very common for train crews employed by [the defendant] in and out of the yards at Salem, Illinois[,] and Villa Grove, Illinois[,] to have to walk in and/or work in remote and dark areas to locate, board, and work with locomotives" and that it

22

"was also common for trains to stop in isolated areas at night sometimes for long periods at the direction of [the defendant] to allow other trains to pass on the tracks." A reasonable jury could conclude that evidence that the defendant's trains stop in isolated areas along a railway path creates a foreseeable opportunity for trespassers to board the defendant's trains undetected and access unlocked areas of the train.

¶ 57 The conductor who worked with the plaintiff on the night of the incident testified that, on a different occasion, he had to chase a trespasser out of a boxcar in St. Peter, Illinois, which is north of the defendant's Salem yard. The trespasser took off running across a field. The manager of the Villa Grove terminal operations testified during his deposition that he was aware that trespassers had been reported. In one incident, he received a report that a trespasser had been sighted on a northbound train that came to the Villa Grove depot. He walked down to the train to see if there was a trespasser, and he saw a person lying down inside a car. He called the Villa Grove police, and they removed the trespasser from the property. An assistant superintendent with the defendant testified that he worked at the Salem yard for approximately 3½ years and received reports about trespassers getting off a train in the Salem yard "once in a while."

¶ 58 This evidence, if believed by a jury, establishes several incidents and reports of trespassers on the defendant's trains that were traveling along a stretch of the defendant's railway between Chicago, Villa Grove, and Salem. The evidence also includes incidents where some of the trespassers engaged in evasive actions to avoid being apprehended once they were discovered. The locomotive at issue in the present case, where the plaintiff's injuries occurred, also traveled along this same railway from Chicago to Villa

23

Grove, and it was headed to Salem when the plaintiff boarded the locomotive and encountered the trespasser.

¶ 59    Under these facts, there was enough evidence for a jury to find that the defendant knew that trespassers, from time to time and at various locations, boarded its trains that traveled along this particular stretch of its railway; that there was a foreseeable risk that these trespassers could be aboard trains coming into the Villa Grove yard; that trespassers could access unlocked areas of its trains; that it knew or should have known that its employees could encounter such trespassers; and that it could foresee a potential risk of harm to its employees as a result of encounters with trespassers hiding on its trains. Although not required, a reasonable jury could make these inferences and conclusions from the evidence contained within the record. Although the defendant emphasizes that reports of trespassers on its trains involve only a few instances, that is an issue for a jury to consider in determining whether there was a foreseeable risk. The circuit court should have submitted the factual issue of foreseeability to a jury and should not have decided the issue as a matter of law by entering a summary judgment.

¶ 60       Lack of Evidence of Recent and Similar Hazards in the Same Vicinity

¶ 61    The defendant cites a number of FELA cases involving injuries to railroad workers caused by third-party criminal acts. It argues that, under FELA's foreseeability standards, in such cases, the plaintiff must "present evidence of similar crimes of sufficient seriousness which are close enough in both proximity of time and distance to place the railroad on notice of the likelihood of such criminal act occurring." The defendant argues that summary judgment was appropriate in the present case because the plaintiff did not

present any evidence of any prior "assaults" by trespassers and did not present any "evidence of a single violent crime upon a train crew member, railroad employee, or any other persons ever occurring at the Villa Grove railyard by a trespasser." The trial court agreed with the defendant's interpretation of FELA, ruling in favor of the defendant on the issue of foreseeability as a matter of law because the plaintiff did not present any evidence of any "recent, similar hazards in the same vicinity." The trial court's analysis and the defendant's argument are misguided because they are based on an incorrect, narrow interpretation of foreseeability under FELA and on cases that are factually distinguishable.

¶ 62                                 Same Vicinity

¶ 63    First, the circuit court was troubled with a lack of evidence concerning prior incidents specifically at the Villa Grove yard. However, this overly narrow construction of foreseeability ignores the evidence in the record concerning the nature of the specific risk of harm at issue. The plaintiff presented evidence that the defendant's locomotives travel back and forth between the Chicago, Villa Grove, and Salem yards, sometimes stopping in remote locations along this path. The record includes instances in which trespassers were spotted *traveling* along this railway on the defendant's trains. The plaintiff presented evidence that the defendant's agents or employees were aware of these incidents. A reasonable jury could consider this evidence and conclude that the defendant knew or should have known that one of its employees could encounter a trespasser on its trains at *any* point along the railway path between Chicago and Salem, including trains pulling into the Villa Grove yard where the incident at issue occurred.

25

The locomotive on which the plaintiff was injured arrived at the Villa Grove yard 30 minutes before the encounter with the trespasser. When the train arrived, the plaintiff spoke with the crew that drove the train from Chicago and then boarded the train and began maneuvers in preparation for the train's journey to Salem.

¶ 64 Evidence that the trespasser injured the plaintiff onboard a train that was en route distinguishes the present case from the cases cited by the defendant. None of the cases cited by the defendant involve an employee's surprise encounter with a trespasser inside a train: *Gibbons v. CSX Transportation, Inc.*, 12 F.3d 212 (6th Cir. 1993) (employee attacked and robbed while working on the ground at a railroad crossing); *Thomas v. Consolidated R. Corp.*, 971 F. Supp. 620 (D. Mass. 1997) (employee injured by a trespasser driving an ATV on railroad's premises); *Inman v. Baltimore & Ohio R.R. Co.*, 361 U.S. 138 (1959) (employee hit by drunk driver while working on the ground at a railroad crossing); *Hartel v. Long Island R.R. Co.*, 476 F.2d 462, 465 (2d Cir. 1973) (employee shot in attempted robbery of ticket office); *Reardon v. Peoria & Pekin Union Ry. Co.*, No. 91-1401, 1993 WL 721285 (C.D. Ill. Sept. 13, 1993) (employee shot with pellet gun fired from a nearby housing project).

¶ 65 These cases cited by the defendant focus on the employer's lack of notice of any special dangers at the "exact locus of the incident." See, *e.g.*, *Hartel*, 476 F.2d at 464. The present case is distinguishable because it involves a trespasser inside a locomotive that recently arrived at the Villa Grove yard from Chicago. It is permissible for a jury to consider this evidence and conclude that the defendant could foresee a surprise encounter

between one of its employees and a trespasser inside a locomotive arriving at the Villa Grove yard.

¶ 66                                    Similar Hazards

¶ 67    Second, the defendant maintains that the plaintiff's evidence was insufficient on the issue of foreseeability because he "presented no evidence of any such prior assault." In its order, the circuit court concluded that this lack of evidence was fatal because a showing of "similar hazards" is required.  Again, the circuit court improperly applied a far too narrow concept of foreseeable harm.

¶ 68    Contrary to the circuit court's conclusion, a jury is not powerless to draw inferences of foreseeability of a risk of harm from a trespasser based on the evidence in the record.  As noted above, the defendant's own safety rules expressly acknowledge that encounters with trespassers can be unsafe.  In addition, the plaintiff presented evidence that other trespassers discovered on the defendant's trains took evasive actions to avoid being apprehended once they were spotted; in some instances, the trespassers ran from authorities.  In the present case, the plaintiff was injured when he came upon a trespasser, and a jury could infer that the trespasser pushed the plaintiff in order to escape.

¶ 69    Properly instructed juries in FELA cases are told to use their "common sense." *CSX Transportation, Inc. v. McBride*, ___ U.S. ___, ___, 131 S. Ct. 2630, 2643 (2011). It does not take much of an inference for a jury, using its common sense, to conclude that the defendant knew or should have known that a trespasser, among other evasive actions, could push an employee in order to avoid capture, thereby creating a special risk of injury

27

to an employee encountering the trespasser in the dark confines of a locomotive's unlit interior.

¶ 70   Furthermore, in *Gallick* and *Syverson* the courts rejected the need to prove prior similar acts in a FELA case. *Gallick*, 372 U.S. at 120-21; *Syverson*, 19 F.3d at 826-27; see also *Dalka*, 2012 WI App 22, ¶ 28, 811 N.W.2d 834 ("We also reject [the defendant's] assertion that *** [the plaintiff] must produce evidence of substantially similar acts of criminal conduct, to wit, violent criminal conduct, to create a genuine issue of material fact regarding foreseeable harm."). As noted by the court in *Syverson*, all the plaintiff needed to show to reach a jury was that the railroad "should have foreseen that the presence of *** trespassers on its property created an inherently unsafe condition for its employees." *Syverson*, 19 F.3d at 826. To the extent that the defendant's cited case authority requires the plaintiff to present evidence of previous violent attacks by trespassers at the exact location where his injury occurred, we decline to follow those decisions under the facts of the present case because such a holding is contrary to *Gallick* and *Syverson*.

¶ 71                                    Recency

¶ 72   Third, with respect to recency, we note that the plaintiff presented evidence that he spoke with a police officer employed by the defendant shortly after his injury. The defendant's police officer stated that the defendant's police department was receiving reports of trespassers on the defendant's trains due to a harvest occurring on farms north of Chicago. The plaintiff also testified about an incident involving trespassers riding on top of his train in 2008 or 2009, and Moore testified about a trespasser riding inside a

28

boxcar around the same period. The recency of these incidents is a matter for a jury to consider in determining foreseeability as a question of fact. It is not a basis for the circuit court to decide the issue as a matter of law.

¶ 73 A jury using its common sense could consider the evidence in the record and find that the defendant knew or should have known that trespassers had been reported and found riding on its trains traveling on its railway between Chicago, Villa Park, and Salem; that the trespassers can gain access to unlocked areas of the train, including the train's locomotives; and that an employee's surprise encounter with one of these trespassers presented a foreseeable risk of harm. The evidence in the record does not present a case where reasonable jurors could reach only one conclusion on the issue of foreseeability. Therefore, the circuit court's entry of a summary judgment in favor of the defendant on the issue of foreseeability was improper.

¶ 74                               CONCLUSION

¶ 75 For the foregoing reasons, we reverse the circuit court's summary judgment and remand this cause for further proceedings.


¶ 76 Reversed and remanded.

29

2015 IL App (5th) 140622

NO. 5-14-0622

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

SHAWN P. MORRIS,                                  )      Appeal from the
                                                  )      Circuit Court of
    Plaintiff-Appellant,                          )      Marion County.
                                                  )
v.                                                )      No. 12-L-60
                                                  )
UNION PACIFIC RAILROAD COMPANY,                   )      Honorable
                                                  )      Wm. Robin Todd,
    Defendant-Appellee.                           )      Judge, presiding.
_____

**Opinion Filed:**          September 25, 2015
_____

**Justices:**          Honorable Bruce D. Stewart, J.

    Honorable Thomas M. Welch, J., and
    Honorable Melissa A. Chapman, J.,
    Concur
_____

**Attorney
for
Appellant**          William P. Gavin, Gavin Law Firm, 17 Park Place Professional
    Centre, Belleville, IL 62226
_____

**Attorneys
for
Appellee**          Thomas E. Jones, Harlan A. Harla, Thompson Coburn LLP, 525
    West Main Street, P.O. Box 750, Belleville, IL 62222-0750
_____